KICKHOEFER, Respondent, vs. HIDERSHIDE, Appellant.

*September 11 — September 26, 1899.*

*Malpractice by physician: Trial: Setting aside verdict: Evidence: Cross-examination.*

1. In an action against a physician for malpractice in treating plaintiff for a fractured wrist, it is *held* that the evidence wholly failed to show, except as to one of the several items or phases of the injury, that they resulted from any negligence or malpractice on the part of defendant or that they were not the natural and legitimate results of the accident; and it appearing, from the method of the trial and from the size of the verdict, that the jury did not confine themselves to the one phase of injury as to which a recovery could

be sustained, but awarded damages for injuries which the defend-
ant did not cause, the verdict should have been set aside as con-
trary to the evidence.

2. The question being as to whether defendant had failed seasonably to
administer passive motions to plaintiff's hand, and a witness for
plaintiff having testified to giving movement to the hand some
weeks after the accident, it was error to refuse to permit him to be
asked, on cross-examination, whether he had at any time heard de-
fendant advise plaintiff to give passive motions to the hand, and
whether plaintiff had told him (witness) that she had had passive
motions given before he gave them.

APPEAL from a judgment of the circuit court for Trem-
pealeau county: O. B. WYMAN, Circuit Judge. *Reversed.*

Defendant, a physician, attended and treated plaintiff for
a fractured wrist from the time of a fall, February 9th, to
April 26th following, at which time he was discharged. The
wrist was then seriously distorted, and its use impaired,
the arm atrophied, the shoulder considerably stiffened, and
the hand and fingers stiff and somewhat shrunken. She re-
ceived treatment from other physicians, including a severe
surgical operation to straighten and mobilize her wrist, and
at the time of trial had in large measure, though by no
means entirely, recovered. She sued plaintiff for malprac-
tice, alleging all of the above-mentioned results as the basis
of damages, and recovered verdict and judgment for $2,000,
from which defendant appeals.

For the appellant there was a brief by *John C. Gaveney*
and *Brown & Abbott*, and oral argument by *Mr. Gaveney*
and *Mr. L. L. Brown*.

For the respondent there was a brief by *Higbee & Bunge*,
and oral argument by *E. C. Higbee*.

DODGE, J. 1. The principal error relied on by appellant
is the denial of his motion to set aside the verdict as not
supported by the evidence. The evidence was very volumi-
nous, and as, in the consideration of this question, no gen-

eral rules are to be deduced therefrom, it would be but needless verbosity to set it forth *in extenso* here. Suffice it to say that, after a most careful examination, we are constrained to the conclusion that as to but one of the items or phases of the injury is there any evidence to go to the jury tending to show negligence or lack of reasonable care, judgment, and professional skill on the part of the defendant responsible therefor. Cases of this sort, where the very substantial injury and extreme suffering on the part of the plaintiff are so apparent, appeal strongly to the sympathies both of court and jury, and in the trial the duty upon the court is all the greater to very carefully consider the relationship between the treatment of the physician and the results to the patient, and to guard against submission of the case to the jury in such form that their sympathies may have an opportunity to visit upon the defendant liability for those injuries which are but the unfortunate result of the accident itself, and not of his treatment.

We are unable to find any evidence upon which the jury should have been permitted to consider whether malpractice on the part of the defendant was responsible for the condition of the plaintiff's shoulder. That condition was undoubtedly a serious one at the time when, some nine months after the accident, Dr. Gunderson found it necessary to administer anæsthetics and break loose adhesions. The testimony of the expert physicians is practically without contradiction that the defendant's diagnosis of neuritis, induced by an injury to the nerve at the place of fracture, as responsible for the severe pains extending to the shoulder, was justified and correct, and that such neuritis, followed, as it was and naturally would be, by lack of motion in the arm and impaired nutrition, was sufficient to account for the subsequent condition of the shoulder, and that, if so, there was nothing which the physician could have done to prevent that result. The only evidence on which responsibility is

sought to be ascribed to the defendant for this condition of
the shoulder is the testimony of one or two of the physicians
that if the plaintiff fell upon her shoulder she might have
fractured the acromion process or she might have bruised
the shoulder, in either of which events her physician should
have treated it to allay inflammation, which, confessedly,
the defendant did not do. The theories upon which these
criticisms are based are, however, entirely and conclusively
exploded. The existence of any fracture of the acromion
process is negatived by the very careful examination, made
while the patient was under anæsthetics, by Dr. Gunderson;
and both that injury and existence of a bruise are negatived
by the symptoms which plaintiff herself establishes, namely,
that the shoulder was free from stiffness, and capable of full
movement, for a considerable time after the injury, and that
the stiffness and loss of mobility were a subsequent develop-
ment,— symptoms which the physicians without dissent de-
clare to be inconsistent with an actual physical injury to the
shoulder at the time of the fall.

With reference to the treatment of the fracture itself and
its immediate locality, the testimony is again all one way,
and without substantial dispute, to the effect that the de-
fendant's treatment was consistent with surgical skill, due
care, and sound judgment. The placing of the splints, the
binding of them, the resetting of the bones after being thrown
out of apposition by muscular spasms, and the refraining
from effort to break down the partial union which defend-
ant found to have taken place at a time some sixteen days
after the injury, when he first discovered the bones slightly
out of apposition, are all approved as proper without prac-
tical conflict. True, some of the physicians expressed doubt
as to whether union, such as to be difficult to break down,
could have taken place between an examination on the 18th,
when no displacement was discovered, and the 26th of Feb-
ruary, when the displacement was discovered. Others sus-

Kickhoefer vs. Hidershide.

tain the possibility of such union, but the fact of union such as to render a severe effort necessary, testified to by the defendant, is certainly not overcome nor put in issue by these hypothetical doubts. The very complete disablement of the wrist, resulting as it did in some distortion, and necessitating a painful and expensive operation, was largely due to an excessive secretion of callus, joining together the radius and ulna. This, it is conclusively shown, was not a result which a skilful physician, in the exercise of sound professional judgment, would have foreseen as the result of the treatment, but one which might have resulted from various causes constitutional to the patient,— neuritic condition, before mentioned, among them. True, the slight displacement at the fracture undoubtedly tended to increase the callus, but there again the physicians are without conflict that it should not have been expected to lead to a formation such as to be injurious. In brief, the evidence wholly fails to show that the disabled condition of either the shoulder or the wrist, or the atrophied condition of the arm, were the result of any negligence or malpractice on the part of the defendant, and were not the natural and legitimate results of the accident suffered by the plaintiff, and for which the defendant was not responsible.

A third class of resulting injury charged against the defendant is an ankylosed condition of the joints of the hand and fingers, whereby the motion of the hand was considerably impaired, some painful treatment has been necessary since, and slight impairment of mobility in the fingers still exists. This is claimed to be due to the alleged fact that the defendant used a splint extending on the back of the hand to the end of the fingers, and bound the fingers firmly to that splint, and kept them so bound for a period of five weeks after the injury, and did not earlier administer passive motions. There is conflict of testimony as to these facts. There is also conflict of testimony as to whether such

treatment, if it took place, was proper and consistent with due skill and care. It may be that an issue of fact was fairly raised as to whether there was erroneous treatment responsible for this injury, and a recovery therefor might have been justified. It, however, was not suggested to the jury that they must consider that injury alone, distinguished from the wrist and shoulder; and although the defendant is perhaps not in a condition to complain of such omission as a specific error, he having requested no instructions in that direction, yet the method of trial, accompanied by the size of the verdict, leads irresistibly to the conclusion that the jury did not confine themselves to this one phase of injury. A verdict of $2,000 would be very clearly excessive for such degree of impaired use of the hand and fingers as is shown by the evidence. The conclusion being irresistible that the jury have awarded damages for injuries the defendant did not cause, the verdict, as rendered, is contrary to the evidence, and it was error not to have set it aside on the defendant's motion.

2. It is alleged as error that the court refused to permit the witness Hutz to answer, on cross-examination, the questions: First. "Did you at any time hear *Dr. Hidershide* advise *Tina* [the plaintiff] to give passive motions to this hand?" Second. "Did the plaintiff tell you that she had had passive motions given before you gave it?" The witness had testified that he assisted the defendant in the treatment of the plaintiff, described that treatment, testified to having given movement to her fingers and hand himself at a time fixed at four, five, or six weeks after the injury, and to conversations with her. The dispute was as to whether the fingers had been released from the bandage and given motions earlier than this, as to which fact there was direct conflict of evidence. We see no excuse for excluding this evidence. It was within the general scope of the direct testimony called out by the plaintiff from this witness, and

it bore directly upon the one principally controverted issue in the case. If the answers had been in the affirmative, they would have tended to refute the testimony of the plaintiff and certain of her witnesses as to the long-continued immobility of the hand. We think the refusal of this cross-examination was error, and for that reason, in conjunction with the other error above pointed out, the judgment must be reversed and a new trial had.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.